# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## DIVISION OF LAFAYETTE

GEORGE RAYMOND WILLIAMS,          CIVIL ACTION: 6:19-cv-00288
M.D., ORTHOPAEDIC SURGERY,
A PROFESSIONAL MEDICAL, LLC

VERSUS                            JUDGE SUMMERHAYS

HOMELAND INSURANCE COMPANY        MAGISTRATE JUDGE HANNA
OF NEW YORK ET AL.

## REPORT AND RECOMMENDATION

Before the Court is the Motion to Remand filed on behalf of George Raymond Williams, M.D., Orthopaedic Surgery, A Professional Medical, LLC, class representative for the certified class of Louisiana healthcare providers ("the Plaintiff Class"). (Rec. Doc. 12). Defendant, Homeland Insurance Company of New York, who removed the matter on March 6, 2019 (Rec. Doc. 1), opposed the Motion (Rec. Doc. 26), and the Plaintiff Class replied (Rec. Doc. 27). The Motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is recommended that the Plaintiff Class's Motion to Remand be denied.

## Factual Background

The Fifth Circuit has once before considered a removal of this case, setting

forth the pertinent factual background as follows:

George Raymond Williams brought a class action in Louisiana state court on behalf of a class of Louisiana medical providers against three Louisiana defendants: Med–Comp USA, Risk Management Services (RMS), and SIF Consultants of Louisiana. Med–Comp operates a preferred provider organization (PPO) network, contracting with the plaintiff class of medical providers for discounted rates. RMS and SIF Consultants apply the Med–Comp PPO discount when administering workers' compensation claims for Louisiana employers. Williams alleged that the defendants failed to comply with the PPO notice provisions of Louisiana law. La. R.S. 40:2203.1(G).

Over one year later, Williams amended the petition to add three non-Louisiana defendants: Corvel Corporation and its insurers Homeland Insurance Company and Executive Risk Specialty Insurance. Corvel provides claims administration services using both the Med–Comp PPO discounts and its own CorCare PPO network rates.

Corvel and the plaintiff class agreed to settle their claims. Before the state court approved the settlement, however, Executive Risk removed the case to federal court claiming federal jurisdiction under CAFA. Both Williams and Corvel moved for remand, arguing that CAFA's local controversy exception applied. 28 U.S.C. § 1332(d)(4). The district court determined that Williams satisfied all the elements of the CAFA exception: two-thirds of the class are Louisiana citizens, Med–Comp is a significant Louisiana defendant, the principal injuries occurred in Louisiana, and no other class actions had been filed within three years. Consequently, the district court remanded the case to state court.

2

*Williams v. Homeland Ins. Co. of N.Y.,* 657 F.3d 287, 289–90 (5th Cir. 2011) (footnotes omitted).[1] ("*Williams I*").

The Fifth Circuit affirmed this Court's decision and the case was remanded back to the state court, where it would proceed through several years of litigation. During that time the Plaintiff Class and all Defendants, except for Med-Comp and Homeland, reached a settlement agreement.

Aspects of this case have also been considered by the Supreme Court of Delaware, which provided the following procedural background relative to the Plaintiff Class's settlement with CorVel (Homeland's insured) and CorVel's subsequent claims against Homeland:

> [O]n March 24, 2011, CorVel and Homeland were named as defendants in a class action filed in 2009 in Louisiana state court known as the *Williams* action… On June 23, 2011, CorVel settled with the plaintiff class in the *Williams* action for $9 million plus a partial assignment of CorVel's Homeland policy … On May 8, 2015, CorVel commenced this action in the Superior Court, alleging breach of the policy for Homeland's refusal to indemnify and defend CorVel in the Louisiana actions. An amended complaint (dated June 9, 2015) added the specific allegation that Homeland violated Louisiana's Bad Faith Statute [La. R.S. 22:1973] by knowingly misrepresenting that CorVel failed to report the PPO claims in compliance with the policy's reporting requirements.

*Homeland Ins. Co. of New York v. CorVel Corp.,* 197 A.3d 1042, 1045 (Del. 2018).

---

[1] CorVel retained from the assignment its right to reimbursement of up to $1 million. See *id* at 1045, fn. 5.

The Supreme Court of Delaware ultimately determined that CorVel's bad faith claims against Homeland were barred by the applicable Delaware three-year statute of limitations. *Id*. at 1047.

In the meantime, back in Louisiana state court, the Plaintiff Class successfully litigated the coverage and direct action issues against Homeland, ultimately obtaining two final judgments. Although the Plaintiff Class did not formally dismiss Homeland from the suit, it acknowledges the final judgment in its favor and that it executed a satisfaction of judgment in favor of Homeland.

On February 5, 2019, the Plaintiff Class filed a Second Amended and Restated Petition in the original state court proceedings in St. Landry Parish in which Med-Comp and Homeland are the only named defendants. (Rec. Doc. 1-1). The Plaintiff Class alleged that its claims against Med-Comp were "re-urged and re-asserted claims previously brought." (Rec. Doc. 1-1, ¶VII). The Plaintiff Class further alleged that its claims against Homeland were "newly acquired claims brought by the Plaintiff Class (as assignee of prior Defendant CorVel Corporation) against Defendant Homeland for violation of La. R.S. 22:1973." (Rec. Doc. 1-1, ¶VIII).

Homeland filed its Notice of Removal on March 6, 2019 (Rec. Doc. 1). This is the second time Homeland has sought to remove this case, the Court having remanded the first time. (See *Williams I, supra*). The Plaintiff Class again seeks to remand.

4

## Applicable Law

The federal district courts have original jurisdiction over cases involving a federal question, pursuant to 28 U.S.C. §1331, and those in which the parties are diverse in citizenship and the amount in controversy exceeds $75,000, pursuant to 28 U.S.C. §1332. Courts may also exercise, or decline to exercise, supplemental jurisdiction over certain cases. 28 U.S.C. §1367; *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.,* 485 F.3d 804, 810 (5th Cir. 2007). 28 U.S.C. §1441 and §1446 provide the procedural mechanism by which a party may remove a matter from state court to a federal district court. Generally, upon the filing of a motion to remand, the removing party bears the burden to prove that federal jurisdiction exists. *De Aguilar v. Boeing Co.,* 47 F.3d 1404, 1408 (5th Cir. 1995).

## Whether the Fifth Circuit's Ruling in *Williams I* precludes Homeland from this second removal.

The Plaintiff Class's first objection to Homeland's removal is that it is barred by the "law of the case doctrine" and the "mandate rule." The Plaintiff Class argues that the Fifth Circuit's prior ruling affirming this Court's 2011 remand constitutes a mandate which prevents Homeland from re-attempting to remove. Homeland counters that the Plaintiff Class's Amended Petition essentially constitutes a new lawsuit raising new and different grounds for removal which were not previously addressed by the Fifth Circuit.

5

"The law of the case doctrine provides that 'an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal.'" *Fuhrman v. Dretke*, 442 F.3d 893, 896–97 (5th Cir. 2006), citing *United States v. Becerra,* 155 F.3d 740, 752 (5th Cir.1998) (quoting *Ill. Cent. Gulf R.R. v. Int'l Paper Co.,* 889 F.2d 536, 539 (5th Cir.1989)). The mandate rule, which is "a specific application of the general doctrine of law of the case," compels the district court to comply "with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." *Fuhrman, 442 at 897,* citing *United States v. Lee,* 358 F.3d 315, 321 (5th Cir.2004). It follows that the mandate rule does not apply to issues which have not been addressed or decided by the appellate court.

Homeland contends that its second removal does not violate the mandate rule, because the Fifth Circuit authorizes parties to seek subsequent removals after a remand upon presentation of "a new and different ground:"

> As a general rule, once a case is remanded to state court, a defendant is precluded only from seeking a second removal *on the same ground.* The prohibition against removal "on the same ground" does not concern the theory on which federal jurisdiction exists (i.e., federal question or diversity jurisdiction), but rather the pleading or event that made the case removable. *See O'Bryan v. Chandler,* 496 F.2d 403, 410 (10th Cir.), *cert. denied,* 419 U.S. 986, 95 S.Ct. 245, 42 L.Ed.2d 194 (1974); *see also One Sylvan Road North Assocs. v. Lark Int'l, Ltd.,* 889 F.Supp. 60, 62, 63 (D.Conn.1995) ("the fact that a case was initially removed and remanded does not itself preclude removal a second time around. A defendant who fails in an attempt to remove on the initial pleadings can file a second removal petition *when subsequent pleadings*

6

*or events reveal a new and different ground for removal*.... By adding the second paragraph of § 1446(b), Congress intended that a party be permitted successive removals" [emphasis added] [citations and quotations omitted]).

*S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 492–93 (5th Cir. 1996) (footnote omitted).

Homeland argues that a "new and different ground for removal" exists in the fact that the previously non-diverse defendants (with the exception of Med-Comp, further discussed below in the context of improper joinder) have since settled and been dismissed from the case. As an additional different ground, Homeland submits that the Plaintiff Class is asserting a new claim for bad faith in its newly acquired capacity as CorVel's assignee.

With regard to Homeland's assertion that the case has become removable since the Plaintiff Class's dismissal of the non-diverse defendants,[2] under the jurisprudential creation of the voluntary-involuntary rule, a case which is not initially removable becomes removable if the plaintiff voluntarily dismisses non-diverse defendants, leaving diverse defendants remaining in the suit. *Weems v. Louis Dreyfus Corp.,* 380 F.2d 545, 549 (5th Cir. 1967). Consistent with this well-established rule, the Court finds that the Plaintiff Class's dismissal of non-diverse

---

[2]     Plaintiff Class dismissed its claims against Louisiana defendants Risk Management Services and SIF Consultants of Louisiana. The Plaintiff Class also dismissed claims against non-Louisiana defendants CorVel Corporation (Homeland's insured) and Executive Risk Specialty Insurance (also CorVel's insurer). See *Williams I*, 657 F.3d at 289.

defendants was sufficient to convert the case into a removable action, assuming for purposes of this analysis that the Plaintiff Class's claims against Med-Comp and Homeland were improperly joined.

The more important consideration is the classification of the Plaintiff Class's newly asserted bad faith claims as CorVel's assignee. The Fifth Circuit's treatment of removals under the jurisprudential exception, known as the revival exception, to the thirty-day time limit to remove under §1446(b) is instructive. In *Johnson v. Heublein, Inc.,* the Fifth Circuit considered whether the defendants had re-acquired the right to remove (after expiration of thirty days from the filing of the initial petition) when the plaintiffs filed an amended petition asserting newly acquired claims as the assignee of dismissed defendants. "The revival exception provides that a lapsed right to remove an initially removable case within thirty days is restored when the complaint is amended so substantially as to alter the character of the action and constitute essentially a new lawsuit." *Johnson v. Heublein, Inc.,* 227 F.3d 236, 241 (5th Cir. 2000). In finding that the amended complaint constituted an essentially new lawsuit justifying removal, the court reasoned that "the allegations contained in the [amended complaint] [bore] no resemblance whatsoever to the allegations of the [original complaint].... [T]he parties to the original action are now aligned in a completely different manner...'" *Id.*

8

In determining whether the Plaintiff Class's (in its capacity as CorVel's assignee) claims against Homeland constitute "a new and different ground" for removal, the Court is guided by the Fifth Circuit's treatment of the amended complaint in *Johnson*. Also significant is the fact that the Plaintiff Class obtained a final judgment against Homeland on the pertinent direct action issues before filing the amending petition. Thus, the Court considers the Amended Petition to be essentially a new lawsuit, which constitutes a "new and different ground for removal." The original claims, now resolved by final judgment, by the Plaintiff Class against Homeland (direct action claims that Homeland's insured, CorVel, violated the PPO statute) are strikingly different than the Plaintiff Class's admitted "newly acquired claims brought by the Plaintiff Class (as assignee of prior Defendant CorVel Corporation)…for violation of La. R.S. 22:1973." (Rec. Doc. 1-1, ¶VIII). CorVel has not previously asserted such claims against Homeland in these proceedings. Indeed, after settling with the Plaintiff Class, CorVel filed a *separate* lawsuit against Homeland alleging bad faith in Delaware state court. (See *Homeland,*197 A.3d at 1045.)

Neither does the Court find that Homeland's second removal violates the mandate rule. In *Williams I*, the Fifth Circuit addressed the merits of Homeland's removal of the Plaintiff Class's PPO claims against it and its insured(s) pursuant to the local controversy exception to CAFA. (See *Williams*, 657 F.3d at 291-92). The

Fifth Circuit was not tasked with reviewing the propriety of first-party claims for bad faith penalties against Homeland.[3] Accordingly, Homeland's second removal was not procedurally improper.

**The Merits of Homeland's Removal.**

Having determined that Homeland was not procedurally precluded from removing this case, the Court now addresses the merits of the removal. Homeland contends that removal was proper under both the Class Action Fairness Act (CAFA) and on the basis of diversity jurisdiction.

## I.     Removal Pursuant to CAFA

"CAFA provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'" *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592, 133 S. Ct. 1345, 1348, 185 L. Ed. 2d 439 (2013), citing 28 U.S.C. §1332(d)(2), (d)(5)(B). "The parties moving for remand bear the burden of proof that they fall within an exception to CAFA jurisdiction." *Williams*, 657 F.3d at 298, citing *Preston*, 485 F.3d at 797.

---

[3]     The Fifth Circuit noted as much: "This case does not involve first party insurance claims against Homeland." *Id.*

10

It is undisputed that the matter in controversy exceeds $5,000,000.[4] Minimum diversity exists, because the majority of members of the Plaintiff Class are Louisiana citizens, which is different than that of  Homeland, which is a citizen of New York and Minnesota (Rec. Doc. 1, ¶14). 28 U.S.C. §1332(d)(2)(A).

With regard to the CAFA requirement for a "class action," the Court questions whether this claim by the Plaintiff Class, in its capacity as the assignee of CorVel, satisfies this requirement. In fact, Homeland acknowledged at the hearing that the Plaintiff Class's newly asserted claim as CorVel's assignee is a first-party claim, and therefore different from the class-certified claims originally asserted in direct action against Homeland. Absent instructive precedent otherwise, and in light of Homeland's own apparent concerns, the Court is not convinced that a claim for bad faith penalties, pursuant to a state's first-party insurer statute, by a party standing in the shoes of an insured constitutes a "class action," even though it is technically asserted by a group of people who have been certified as a class on other, unrelated grounds. To allow an assignee of such rights to proceed as a class would seem to frustrate the purpose of CAFA to "encourage federal jurisdiction over interstate class action lawsuits of national interest." *Preston*, 485 F.3d at 797. A suit for bad faith penalties is hardly of national interest.

---

[4]    The Plaintiff class alleges mandatory damages of $9,000,000 and statutory penalties of up to an additional $18,000,000. (Rec. Doc. 1-1, ¶XVIII).

11

If the Court were to consider the Plaintiff Class's pursuit of assigned claims as a class action, jurisdiction could still be barred by an exception to CAFA. The Plaintiff Class maintains, as it did in *Williams I*, that this case was not removable under CAFA because of the local controversy exception.

Pursuant to the local controversy exception, the only provision at issue in this appeal, the district court "shall decline to exercise jurisdiction" when the action meets the following criteria:

(I)  greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

(II)  at least 1 defendant is a defendant—

(aa) from whom significant relief is sought by members of the plaintiff class;

(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc) who is a citizen of the State in which the action was originally filed; and

(III)  principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed[.]

*Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.,* 485 F.3d at 797, citing §1332(d)(4).

"[T]he parties moving to remand the class action to state court must prove that the CAFA exceptions to federal jurisdiction divest the district court of subject matter jurisdiction. *Id*. citing *Serrano v. 180 Connect, Inc.,* 478 F.3d 1018, 1024 (9th

Cir.2007); *Frazier v. Pioneer Ams. LLC,* 455 F.3d 542, 546 (5th Cir.2006). "If the applicability of an exception is not shown with reasonable certainty, federal jurisdiction should be retained." *Arbuckle Mountain Ranch of Texas, Inc. v. Chesapeake Energy Corp.,* 810 F.3d 335, 338 (5th Cir. 2016).

### A.  *Whether the "principal injuries" occurred in Louisiana.*

The Plaintiff Class asserts that the local controversy exception to CAFA justifies remand because the "principal injuries" at issue occurred in Louisiana. A key initial inquiry is whose principal injuries are at issue. The Plaintiff Class argues, citing *Williams I*, that Homeland's "related conduct" as the insurer of CorVel caused principal injuries to the Plaintiff Class in Louisiana. (Rec. Doc. 12-6 at 16). Homeland maintains that the "principal injuries" are the economic losses of CorVel, specifically its out-of-pocket money expended to fund the settlement and statutory bad faith penalties. (Rec. Doc. 26 at 20). Although the Plaintiff Class couches the issue in terms of injuries to the Plaintiff Class, the Court does not agree. The Court is guided by the Fifth Circuit's reasoning in *Williams I,* which distinguishes the claims asserted in *Williams I* from the first-party claims now at issue:

> The district court found that the principal injuries occurred in Louisiana because the record showed that a supermajority of plaintiffs are Louisiana citizens, who rendered services in Louisiana, and who allege that the defendants violated the Louisiana PPO Act. The injuries from these statutory violations occurred by the failure to provide notice at the point of medical service in Louisiana. Although Homeland is an out-of-state defendant who insured the out-of-state Corvel, the CAFA exception is satisfied because Homeland's *related conduct* as insurer

13

includes Corvel's failure to notify in Louisiana. Williams points to the unique nature of the claims asserted, where the sole claims against Homeland are by virtue of the Louisiana Direct Action statute and based on the conduct of Homeland's insured. This case does not involve first party insurance claims against Homeland, and therefore the location of the principal injuries does not depend on the state of issuance of Homeland's insurance policy.

*Williams I*, 657 F.3d at 292.

Unlike the circumstances which the Fifth Circuit considered, and specifically contrasted, in *Williams I*, now the case does involve a first-party insurance claim against Homeland. Homeland cites this Court's opinion in *Aspen Specialty Ins. Co. v. Tech. Indus., Inc.* for the proposition that the injury in a bad faith claim should be deemed to have occurred in the place where the insured's primary office is located. (Rec. Doc. 26 at 20). In *Aspen*, the insured (a Louisiana corporation) asserted claims against its insurers for penalties under Louisiana's bad faith statutes arising out of the insurers' handling of underlying claims asserted in Texas. In conducting a choice of law analysis, this Court noted that "[t]he alleged injury occurred in Louisiana where [the insured's] business is centered. The conduct causing the alleged injury did not occur in Texas." *Aspen Specialty Ins. Co. v. Tech. Indus., Inc.,* No. 6:12-CV-02315, 2015 WL 339031, at *4 (W.D. La. Jan. 22, 2015)

In *Aspen*, this Court further found significant that the insurance policies had presumably been negotiated, issued, and delivered in Louisiana (the insured corporation's place of business), and that the insurers had no significant relationship

14

with Texas, despite the fact that the underlying litigation had proceeded in Texas. *Id*. This Court will again apply its reasoning in *Aspen* and find that the Plaintiff Class's alleged injury (which are actually, in this instance, CorVel's injuries sustained as a result of its insurer's alleged misrepresentation) occurred in the place of CorVel's incorporation, Delaware, and principal place of business, California, where the insurance policy was presumably negotiated, issued, and delivered, and where emails between CorVel and Homeland were presumably sent and received.[5] As the Delaware Supreme Court noted:

> The parties have dueled over the choice of law for CorVel's bad faith claim, with CorVel arguing for Louisiana law and Homeland contending for Delaware. In reality, it might be that neither party is correct, given the centrality of California to the nationwide insurance relationship set up between CorVel, as a California-based business, and Homeland, an insurer incorporated in New York with its principal place of business in Massachusetts. ... In other words, there is a litigable issue over whether CorVel may even proceed under the Louisiana statute, or must press any claim for bad faith denial of its claim under another state's law. For purposes of this appeal, we accord CorVel the benefit of assuming, for the sake of our timeliness analysis, that its position is correct, and we confine ourselves to addressing whether, assuming that is the case, CorVel made a timely claim.

*Homeland*, 197 A.3d at 1046, fn. 13. (Citations omitted.)

---

[5]    Counsel indicated at the hearing that the bad faith claim arises out of emails between CorVel and Homeland. The Court makes no finding on the viability or merits of the bad faith claim.

Therefore, the Court finds that the principal injuries at issue in the bad faith claim against Homeland did not occur in Louisiana, such that if CAFA were to apply, the local controversy exception does not.

### B. *Whether Med-Comp is a "significant" defendant.*

The Plaintiff Class asserts that Med-Comp is a significant local defendant whose presence justifies remand pursuant to the local controversy exception. Homeland argues that the Plaintiff Class's "total failure to pursue the claims against Med-Comp" over the prior eight years of litigation (since the Fifth Circuit decided *Williams I*), as well as the fact that Med-Comp is now defunct, now renders Med-Comp an insignificant defendant for purposes of the local controversy exception. (Rec. Doc. 26 at 23-24). In response, the Plaintiff Class maintains that it has not allowed its claims against Med-Comp to abandon, but that it has focused its efforts on Homeland over the past several years. (Rec. Doc. 27 at 4).

The local controversy exception requires the district court to remand a class action that otherwise satisfies CAFA's jurisdictional requirements if at least one local defendant is a defendant from whom significant relief is sought by members of the class and whose alleged conduct forms a significant basis for the claims asserted. *Opelousas Gen. Hosp. Auth. v. FairPay Sols., Inc.,* 655 F.3d 358, 361 (5th Cir. 2011), citing 28 U.S.C. §1332(d)(4)(A)(i)(II)(aa) and (bb). Failure of either element is fatal to the exception. *Id*. In considering whether a defendant is significant for

purposes of the exception, the court should consider "allegations or extrinsic evidence detailing the local defendant's conduct in relation to the out-of-state defendant[]."[6] *Id*. at 363. "[A] definitive analysis of the measure of damages caused by each defendant" is not required. *Id*.

In *Opelousas Gen. Hosp.,* the Fifth Circuit considered whether a plaintiff class's claims against a local defendant insurer formed a significant basis of the claims asserted. In finding that the plaintiff class failed to satisfy the significant basis test, the court reasoned that "none of th[e] evidence connects [the local defendant] to [a non-local defendant] or provides any basis to compare [the local defendant's] conduct to that of the other defendants to determine whether [the local defendant's] conduct is significant to the plaintiff's claims." *Id*. at 363. In other words, the court relied on the lack of connexity between the claims against the local and non-local defendants. This Court does not find there is any connexity between the Plaintiff Class's pre-existing claims against Med-Comp and the new, distinct claims against Homeland for bad faith penalties.

---

[6]     The Fifth Circuit in *Opelousas Gen. Hosp*. explicitly did not decide whether the inquiry must be limited to the pleadings or whether the parties can rely upon extrinsic evidence. The opinion was ultimately based, in part, on extrinsic evidence, because neither party objected to its use before the district court. Likewise, in this case, both parties rely on extrinsic evidence in support of their positions.

In *Williams I*, the Fifth Circuit held that Med-Comp was a significant local defendant under the circumstances presented at that time, such that the Plaintiff Class satisfied this element of the local controversy exception. *Williams*, 657 F.3d at 292. At that time, the other defendants, including CorVel, and Homeland as CorVel's insurer, were still in the suit, such that the claims against them arising out of alleged violations of the PPO statute could easily be deemed related. The circumstances have now changed. With CorVel and the other defendants now settled and released, and a final judgement on the merits having been obtained against Homeland (as a direct action defendant as CorVel's insurer), the only claims to be considered are the Plaintiff Class's pre-existing claims against Med-Comp and the new first-party claims for bad faith penalties asserted by the Plaintiff Class as CorVel's assignee. The Petition is devoid of any factual allegations, and no evidence has been presented showing how the two distinct claims are connected or related. Thus, the Court finds that the Plaintiff Class's claims against Med-Comp are not a significant basis, and in fact, are unrelated to, the new claims against Homeland.

Homeland also argued that Med-Comp is not a defendant "from whom significant relief is sought,"[7] because the Plaintiff Class seeks a significantly less amount in damages from Med-Comp than from Homeland, citing the Petition, which

---

[7]    18 U.S.C. §1332(d)(4)(II)(aa).

seeks an undefined amount of "double fair market value of medical services provided [of at least] the greater of $50 per day of non-compliance or $2,000, together with attorney fees…" from Med-Comp. (Rec. Doc. 1-1, ¶XIII). This is the same calculation of damages which the Plaintiff Class initially sought from all six defendants, including Med-Comp. (First Amended and Re-Stated Petition for Damages and Class Certification in *Williams I*, Docket No. 6:11-cv-00686, Doc. 1-24, ¶XVI). The Plaintiff Class cited the certification hearing transcript and attached a list of 43,496 Med-Comp discounts, which it quantified as worth as least $87,000,000. (Rec. Doc. 27 at 7, citing Rec. Doc. 20-6 and 27-1). In contrast, in the Amended Petition, the Plaintiff Class seeks at least $9,000,000, up to $27,000,000 from Homeland. (Rec. Doc. 1-1, at 7).

The Court need not make a "definitive analysis of the measure of damages caused by each defendant," and declines to do so here, where the Plaintiff Class has not shown that Med-Comp's conduct forms a significant basis for the claims asserted. However, the Court finds notable the Release between the Plaintiff Class and CorVel, cited by Homeland at the hearing, which includes as "Released Parties" "any entity…who paid or repriced/adjusted an invoice for medical services…that was discounted or reduced under a PPO network owned or operated by…a PPO network contracted with CorVel…" (Rec. Doc. 17-11, ¶1.33; see also the releasing language at ¶ 8.4). The Plaintiff Class did not point the Court to any language

purporting to reserve rights against Med-Comp, and the Plaintiff Class did not cite any meaningful efforts to prosecute its remaining claims against Med-Comp after having settled with the other defendants. Thus, it is supportable that, although the Plaintiff Class had originally sought $87 million from Med-Comp and the other defendants, the amount of damages now sought from the sole remaining defendant on those claims, Med-Comp, was diminished by the settlement with the other defendants.

## II.  <u>Removal on the Basis of Diversity.</u>

Regardless of CAFA, Homeland contends that removal was nevertheless proper based upon the ordinary rules of diversity removal pursuant to §1332. Homeland urges the Court to disregard the presence of Med-Comp, a non-diverse defendant, either because there is no reasonable basis for recovery against Med-Comp, or because Med-Comp was improperly joined under the theory of egregious misjoinder enunciated by the Eleventh Circuit in *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1360 (11th Cir.1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.,* 204 F.3d 1069 (11th Cir.2000).[8]

### A.  *<u>Improper Joinder under the reasonable basis of recovery theory.</u>*

---

[8]      Unlike its previous removal in 2011, Homeland does not specifically cite *Tapscott*; however, the *Tapscott* egregious misjoinder theory nonetheless appears to be the basis for Homeland's argument.

Under established Fifth Circuit jurisprudence, removal is proper despite the presence of a non-diverse defendant if the removing defendant can establish improper joinder by either of two means:

> [W]e have recognized two ways to establish improper joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Only the second way is before us today, and we explained in *Travis v. Irby*[8] that the test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

> *Smallwood v. Illinois Cent. R. Co.,* 385 F.3d 568, 573 (5th Cir. 2004), citing *Travis v. Irby,* 326 F.3d 644, 646–48 (5th Cir.2003).

Relying upon the second basis for establishing improper joinder, Homeland argues that the Plaintiff Class has no reasonable basis of recovery against Med-Comp, because Med-Comp is defunct, its corporate registration having been terminated by the State of Louisiana and no longer subject to reinstatement. (Rec. Doc. 26 at 28). As the removing defendant, Homeland "must demonstrate 'that there is no possibility of recovery by the plaintiff against [a non-diverse] defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against [a non-diverse] defendant.'" *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.,* 818 F.3d 193, 199–200 (5th Cir. 2016), quoting *Smallwood,* 385 F.3d at 573. In determining whether the plaintiff has asserted a reasonable basis for recovery against the non-diverse

defendant, the court should apply federal pleadings law and conduct a F.R.C.P. Rule 12(b)(6) analysis. *Id*. at 204-205. If the court finds that a non-diverse defendant has been improperly joined, the court must dismiss the non-diverse defendant *without prejudice*. *Id*. at 210. The Court is also permitted to sever an improperly joined claim. *Id*. at 210, fn. 67, citing F.R.C.P. Rule 21.

The Court agrees that the Plaintiff Class has no reasonable basis of recovery against Med-Comp, but not for the reason posited by Homeland.[9] Rather, upon considering that the Plaintiff Class's new claim against Homeland was made *in its capacity as CorVel's assignee* (i.e. as if it were CorVel),[10] the Court cannot discern any reasonable basis by which *CorVel* might recover against *Med-Comp* for bad faith penalties. The Plaintiff Class (as CorVel's assignee) has made no such allegations, and there is no appreciable evidence of any claim CorVel might assert against Med-Comp. Med-Comp was not CorVel's insurer. Based on the facts presented, CorVel

---

[9]      Therefore, the Court makes no determination as to whether Med-Comp was improperly joined based on its status as a seemingly neglected corporation, except to note that at least one court in the Western District, addressing the Plaintiff Class's similar claims against an unrelated entity, has previously refused to "wade into a 'factual swamp' to assess [the defendant's] actual financial viability." *Williams v. Bestcomp, Inc.,* No. 6:11-CV-00050, 2011 WL 4499427, at *8 (W.D. La. Sept. 26, 2011) (J. Foote), citing *Coleman v. Estes Exp. Lines Inc.,* 631 F.3d 1010, 1019 (9th Cir.2011); *Coffey v. Freeport McMoran Copper & Gold,* 581 F.3d 1240, 1245 (10th Cir.2009). Further, there is no evidence in the record that Med-Comp is actually unable to pay a judgment. Its defunct corporate status may be suggestive of its financial unviability, but it is in no way determinative.

[10]      By assignment, the Plaintiff Class has stepped into CorVel's shoes. See *Woodfield v. Bowman*, 193 F.3d 354, 359 (5th Cir. 1999).

would have no basis upon which to bring a claim against Med-Comp in state court or to otherwise join any claims against Med-Comp with its bad faith claims against Homeland. Med-Comp and Homeland are not solidary obligors in this situation; they are not liable for the same alleged damages. Hence, after conducting a Rule 12(b)(6) analysis of the allegations in the Petition, the Court finds there is no reasonable basis that the Plaintiff Class (as CorVel's assignee) might recover against Med-Comp.

While the Court is without authority to apply a *Tapscott* analysis to find misjoinder (as further addressed below), this Court's holding, which applies a traditional test for improper joinder, is in line with Fifth Circuit jurisprudence suggesting that the fraudulent misjoinder of *plaintiffs* should not be allowed to defeat diversity jurisdiction. *In re Benjamin Moore & Co.,* 309 F.3d 296, 298 (5th Cir.), *subsequent mandamus proceeding,* 318 F.3d 626 (5th Cir. 2002). See also this Court's discussion in *Creadeur v. Atl. Richfield Co.,* No. 6:14-CV-00695, 2014 WL 2999261, at *5 (W.D. La. July 3, 2014).

The Court recommends that the Plaintiff Class's claims against Med-Comp be severed and remanded. This recommendation should not be interpreted as a decision to maintain jurisdiction over the Plaintiff-Class's pre-existing unresolved claims against Homeland (if any) for its insured's alleged violations of the PPO statute, as this Court's lack of jurisdiction over those claims was previously adjudicated in *Williams I*. Rather, the Court recommends a finding of subject matter

23

jurisdiction based on diversity only as to the Plaintiff Class's claims, as CorVel's assignee, against Homeland for bad faith penalties pursuant to La. R.S. 22:1973. The Court recommends that the Plaintiff Class's claims against Med-Comp and any remaining third-party, direct action claims against Homeland (if any)[11] be remanded, such that the disbursement of settlement funds may proceed.

At the end of the procedural quagmire which has resulted from the last several years of litigation, the Court is left with a single claim for $9,000,000 to $27,000,000 by CorVel (a California/Delaware company) against its insured, Homeland (a New York/Minnesota company) for alleged violations of La. R.S. 22:1973. The fact that the Plaintiff Class (of Louisiana) is wearing CorVel's shoes does not destroy the existence of diversity or the amount in controversy far exceeding the jurisdictional limits of §1332.[12]

## B. *Tapscott Misjoinder*

Having found an improper joinder under the traditional standard of lack of a reasonable basis for recovery, the Court need not engage in a detailed analysis of

---

[11]    The Court makes no finding as to whether any claims against Homeland remain in state court.

[12]    Although, pursuant to 28 U.S.C. §1332(C)(1) Homeland is deemed a citizen of the state(s) in which its insured, CorVel, is a citizen (Delaware/California), the Plaintiff Class's claims as CorVel's assignees are not direct action claims, such that §1332(C)(1) is inapplicable. Further, the Plaintiff Class did not by assignment acquire CorVel's citizenship. See *Lerman v. Rock City Bar & Grille, Inc.,* No. 1:09 CV 2444, 2010 WL 319725, at *2-3 (N.D. Ohio Jan. 20, 2010). As such, diversity between the Plaintiff Class and Homeland remains.

Homeland's alternative argument that the Plaintiff Class is guilty of fraudulent misjoinder. Under the *Tapscott* theory, "fraudulent" or "egregious" misjoinder is said to exist when 1) a defendant has been misjoined in violation of applicable rules of joinder, and 2) the misjoinder is so egregious as to constitute fraudulent joinder. *Id.* A "mere misjoinder" does not suffice. *Id.*

The Fifth Circuit has neither endorsed nor rejected the *Tapscott* approach as a third method of showing improper joinder. Nonetheless, the district courts have on several occasions considered whether to maintain subject matter jurisdiction pursuant to *Tapscott*, often with inconsistent results.[13] Likewise, this Court has before considered whether to undertake a *Tapscott* egregious misjoinder analysis. In *Creadeur v. Atlantic Richfield Co*., this Court reviewed the Fifth Circuit's undefined position on *Tapscott* and ultimately held that it was without authority to find that a defendant had been "fraudulently" or "egregiously" misjoined as sanctioned by *Tapscott* and courts applying it. *Creadeur v. Atl. Richfield Co.,* No. 6:14-CV-00695, 2014 WL 2999261, at *7 (W.D. La. July 3, 2014). See also *Le Talley-Ho Constr.*

---

[13]    See e.g. *Booth v. Louisiana Citizens Coastal Plan*, No. 206 CV 2149, 2007 WL 933665, at *3 (W.D. La. Feb. 16, 2007) (declining to apply *Tapscott* and remanding the entire suit for a determination on joinder). Contrast *Accardo v. Lafayette Ins. Co.,* 2007 WL 325368, *2 (E.D.La.Jan .30, 2007); and *Frankland v. State Farm Fire & Cas. Co.,* No. 2:07-CV-1767, 2008 WL 4072819, at *3 (W.D. La. July 2, 2008), which applied a *Tapscott* analysis and concluded that the district court may permissibly sever improperly joined claims and remand the misjoined claims back to state court.

*Co. v. John Deere Constr. & Forestry Co.,* No. CV 15-02420, 2015 WL 7345754, at *4 (W.D. La. Nov. 19, 2015).

Since this Court decided *Creadeur* in 2014, the Fifth Circuit has provided no further instruction regarding the extent of *Tapscott's* application in this Circuit. Neither has Homeland convinced the Court to depart from its analysis in *Creadeur*. Thus, to the extent Homeland invites the Court to analyze the two claims asserted by the Plaintiff Class generally (as opposed to, on the basis of the Plaintiff Class's two distinct identities in this suit), the Court declines.

The Court further notes that, even if the Court were at liberty to freely apply *Tapscott* and find that the Plaintiff Class engaged in "egregious" misjoinder, this Court is without authority to sever the claims against Med-Comp and Homeland in this scenario. See *Credeur*, at 6-7, discussing *Crockett v. R.J. Reynolds Tobacco Co.,* 436 F.3d 529, 531 (5th Cir. 2006). Rather, the more acceptable approach would have been for Homeland to file an exception for improper joinder or a motion to sever in the state court proceedings. *Id*.

## Conclusion

For the reasons discussed herein, it is recommended that the Plaintiff Class's Motion to Remand (Rec. Doc. 12) be DENIED. It is further recommended that the Plaintiff Class's (in its capacity as CorVel's assignee) claims against Med-Comp be

dismissed without prejudice, and that the Plaintiff Class's pre-existing claims against Med-Comp and Homeland (if any) be remanded.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 4th day of June, 2019.

_____

PATRICK J. HANNA

27